# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PATRICK CAGE, | ) |
| Plaintiff, | ) |
| | ) No. 17-cv-07621 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| TIFFANY HARPER, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick Cage worked at Chicago State University ("CSU" or the "University") as General Counsel from November 2009 until his termination in May 2017. Following his termination, Cage filed suit under 42 U.S.C. § 1983, alleging that Defendants Tiffany Harper, Nicholas Gowen, Kambium Buckner, Marshall Hatch, Sr., Horace Smith, (together, "Individual Board Defendants"), Rachel Lindsey, and the CSU Board of Trustees ("Board") violated his rights under the Due Process Clause of the United States Constitution by failing to provide him twelve months of continued employment after notice of his termination. Cage further alleges that Defendants violated the Illinois State Officials and Employees Ethics Act ("Ethics Act"), 5 ILCS 430/15-10, when he was terminated in retaliation for engaging in protected whistleblowing activity. Defendants now move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 22). For the foregoing reasons, the motion is granted in part and denied in part.

# BACKGROUND[1]

Cage served as General Counsel at CSU from November 2009 until May 2017. (Am. Compl. ¶¶ 21–22, 71, Dkt. No. 17.) In February and April 2017, Cage voiced concerns that then-Board member Paul Vallas was engaging in conduct that violated the University's Bylaws. (*Id.* ¶ 40.) Cage first discussed his concerns over lunch with Defendant Hatch. (*Id.*) Then, through private counsel, Cage sent a letter to the Board reiterating his concerns. (*Id.*) Subsequently, Defendants Harper and Gowen approached then-interim University President Cecil Lucy and asked whether he would be willing to terminate Cage if he was retained as President of the University. (*Id.* ¶ 50.) Lucy answered that he would not terminate Cage, and shortly thereafter he was replaced by Defendant Lindsey. (*Id.*)

After Lindsey was appointed as the University's President, Cage contacted her and inquired about rumors that she planned to terminate his employment. (*Id.* ¶ 52.) Lindsey assured Cage that she was not planning to terminate him. (*Id.*) Approximately one week later, on May 15, 2017, Lindsey invited Cage to her office for a meeting. (*Id.* ¶ 53.) During the meeting, Lindsey notified Cage that she had decided he was not the right fit for his position and that the University was terminating his employment, effective immediately. (*Id.* ¶ 53, 70–71.)

According to the Board's Rules and Regulations ("Regulations"), Section II, Subsection B.4, paragraph (b)(2)(c),[2] University employees who, like Cage, are beyond their sixth year of

---

[1] Except where otherwise noted, the following facts are taken from the first amended complaint. For the purposes of this motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in Cage's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

[2] In deciding a motion to dismiss, district courts may consider documents incorporated by reference into the complaint. *See also Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 322 (2007) (holding that for a motion to dismiss "courts must consider the complaint in its entirety . . . in particular, documents incorporated into the complaint by reference."); *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (7th Cir. 1985). While the full Regulations were not attached to either the amended complaint or the motion to dismiss, the Court directed the parties jointly to submit an authentic copy of the Regulations to

employment, are entitled to receive notice of their termination at least twelve months prior to the termination date, if the termination is without cause. (*Id.* ¶ 61.) The Regulations provide other procedures that the University must follow when terminating an employee for cause. (*Id.* ¶ 64.) The for-cause termination procedures were not followed in the present case, thus Cage was terminated without cause. (*Id.* ¶ 8.) Cage's last day of work at CSU was May 15, 2017, and a University security officer escorted him off University property. (*Id.* ¶¶ 70–71.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleading facts "merely consistent with" a defendant's liability and pleading legal conclusions disguised as factual allegations are, by themselves, insufficient. *Id.* (citing *Twombly*, 550 U.S. at 556). This standard does not necessarily require a complaint to contain "detailed factual allegations." *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In the present case, Cage claims that Defendants violated his constitutional right to procedural due process by depriving him of his property interest in twelve months of continued employment after notice of his termination. Cage further claims that Defendants violated the Ethics Act when it terminated him for his concerns regarding potential violations of University Bylaws. Defendants seek to dismiss all claims.

---

the Court. The parties complied. (*See* Joint Stipulation Regarding Authenticity of Board Regulations, Ex. A, Dkt. No. 54-1).) All citations to the Regulations in this opinion are based on the authenticated copy submitted by the parties.

## I. Cage's § 1983 Claims

### A. The Board as a "Person" for Purposes of § 1983

Defendants argue that Cage cannot bring a § 1983 claim against the Board because, as an arm of the state, the Board is not considered a "person" for purposes of the statute. Cage, however, contends that his claim should be permitted because the Board waived its sovereign immunity by removing this case to federal court.

Section 1983 provides that "[e]very person" who under the color of state law deprives another of "any rights, privileges, or immunities secured by the Constitution and laws" is liable to the injured party. 42 U.S.C. § 1983. In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1988), the Supreme Court held "that a State is not a person within the meaning of § 1983." *Id.* at 64. The Supreme Court considered multiple factors in reaching that conclusion, one of which was the states' sovereign immunity. *Id.* at 64–70. However, the common usage and meaning of the term "person," the legislative history, and congressional intent regarding § 1983 were also factors in the conclusion. *Id.*

As an "alter ego of the state," a state university, including its board of trustees, is "not subject to suits brought under § 1983." *Kaimowitz v. Bd. of Trs. of Univ. of Ill*, 951 F.2d 765, 767 (7th Cir. 1991). Nonetheless, Cage claims that because Defendants removed this case from state court (where it was originally filed) to federal court, the Board has waived its sovereign immunity. But the Board does not claim that it is entitled to sovereign immunity with respect to Cage's § 1983 claim. Instead, it argues that the Board is not subject to suit under the terms of the statute.

Generally, if a state defendant removes a claim to federal court, it has waived its right to assert a sovereign-immunity defense. *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (finding

4

that a state waived its right to assert sovereign immunity with respect to a state law claim when it removed the case to federal court); *Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 460–61 (7th Cir. 2011) (recognizing that a state waives its ability to assert a sovereign immunity defense in response to a federal claim when it removes the case to federal court). Yet a state's waiver of sovereign immunity still does not subject that state to suit under § 1983 because, immune or not, "a state is not a 'person' against whom a § 1983 claim . . . might be asserted." *Lapides*, 535 U.S. at 617–18 (quoting *Will*, 491 U.S. at 66); *see also Phoenix*, 653 F.3d 448, 460–61 (specifying that a state's waiver of sovereign immunity does not allow a § 1983 claim to go forward because the state is not a person under that statute). The law is clear that a waiver of sovereign immunity cannot overcome the fact that a state is not a suable "person" for purposes of § 1983. Consequently, Cage's § 1983 claim against the Board must be dismissed.

### B. Property Interest in Twelve-Month Term of Continued Employment

Defendants next challenge whether Cage had a protected property interest in continued employment at the University.

Defendants emphasize that the Regulations state that employees "serve at the pleasure of the President," (Bd. Reg. § II(B)(4)(b)(2)), and thus they assert that Cage should be considered an employee-at-will who does not have a constitutionally protected property interest in continued employment at the University. Cage, on the other hand, argues that while he could have been terminated for any reason, he could not be terminated *at any time*—the Regulations provide that employees "in the sixth or subsequent year of employment" who are terminated without cause shall receive notice of termination "not later than twelve months prior to the termination date specified in the notice." (Bd. Reg. § II(B)(4)(b)(2)(c).) Cage contends that this provision creates

5

a protected property interest in twelve months of continued employment after notice of termination.

A property interest protected by the due process clause of the Fourteenth Amendment "may take many forms." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972). To obtain a protected property interest, a person must have "more than an abstract need or desire for [that interest and] more than a unilateral expectation of it . . . . He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. Further, property interests are not created by the Constitution but by "existing rules or understandings that stem from an independent source such as state law." *Id.* at 577–78.

In Illinois, employees are presumed to be at-will. *Border v. City of Crystal Lake*, 75 F.3d 270, 274 (7th Cir. 1996) (citing *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 317–18 (Ill. 1987)). However, at-will employment relationships can be otherwise modified or "overcome by demonstrating that the parties contracted otherwise." *Duldulao*, 505 N.E.2d at 318. In *Duldulao*, the Illinois Supreme Court held that "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present" *Id.* The Seventh Circuit has applied the *Duldulao* analysis when considering whether employee handbooks and other policy statements create a protected property interest in employment. *See Cromwell v. City of Momence*, 713 F.3d 361, 364–66 (7th Cir. 2013); *Border*, 75 F.3d at 273–74 (7th Cir. 1996).

Here, however, Cage is not alleging that he had a general protected property interest in his job. He claims only that he was entitled to a fixed term of twelve months continued employment following his notice of termination. The Seventh Circuit recognized in *Meade v. Moraine Valley Community College*, 770 F.3d 680, 687 (7th Cir. 2014), that under Illinois law,

6

even employment for a fixed duration can create a property interest in certain circumstances. In *Meade*, an adjunct professor at a state college was terminated before she was scheduled to teach for the Fall Semester. The professor sued under § 1983, alleging only that she was deprived of a property interest in the fixed term stated on her employment agreement. The Seventh Circuit noted that "[t]o demonstrate a cognizable property interest . . . [one] must be able to show that she had some legitimate expectation of continued employment." *Id.* at 686. Such an "expectation can arise through contractual language limiting the [entity's] discretion to fire" the employee. *Id.* The Seventh Circuit then held that the term on the professor's employment agreement limited the college's ability to fire the professor immediately and created a property interest for the stated employment term. *Id.* at 687. Similarly, Cage contends here that the Regulations limited CSU's discretion to terminate him immediately without cause and created a property interest in a limited term of employment following his notice of termination without cause.

Defendants respond that the Regulations do not create any property interest because they are solely procedural, and regulations that create "merely . . . procedural rights" do not give rise to a property interest. *Bishop v. Wood*, 426 U.S. 341, 347 (1976); *see also Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989) ("It is by now well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance."). Indeed, if a statute or regulation "merely delimits what procedures must be followed before an employee is fired, then it does not contain the requisite substantive predicate" to create a protected property interest. *Cain*, 879 F.2d at 1426.

While Defendants quote the Regulations to support their claim that the Regulations are merely procedural, they do so selectively, omitting the entirety of the relevant provisions. When

7

read in full context, Section II, Subsection B.4, paragraph (b)(2) of the Regulations treats the twelve-month period as more than procedural, stating that employment was "at-will and subject only to the notice and ***additional term of employment*** described." (Bd. Reg. § II(B)(4)(b)(2) (emphasis added).) Such conditional language indicates that the Regulations do create a limited-term property interest. *See Meade*, 770 F.3d at 687; *see also Grimes v. E. Ill. Univ.*, 710 F.2d 386, 387 (7th Cir. 1983) (finding that while the employee remained at-will despite his change from continuing basis employment to a year-to-year contract, the change nonetheless entitled the plaintiff to "a year's notice of termination, something he would not have had if he had continued on a year-to-year basis").

Further, Defendants attempt to bolster their assertion that the Regulations are solely procedural by misleadingly quoting another portion of the Regulations, which states that they are "general statements of policy or procedure." Reviewing the relevant provision in its entirety, however, it is evident the Regulations do not claim to be merely procedural. The provision states:

> Board Regulations are general statements of policy or procedure adopted by the Board concerning the conduct and operation of the Board or the University within the framework of the Board's Governing Policies. Guidelines, policies, or other Board actions directed to specific situations or intended to direct or guide the University are not to be construed as Board Regulations.

(Bd. Reg. § I(B).) First, the plain language of the cited provision makes clear that while certain Regulations may be procedural, others may be statements of policy. And the Supreme Court has declared that a university policy can secure a property interest. *See Roth*, 408 U.S. 578. In addition, the relevant sentence cited states that the Regulations are "within the framework of the Board's Governing Policies." Additionally, the last sentence of the relevant provision, which the Defendants do not cite, states: "Guidelines, policies, or other Board actions directed to specific situations or intended to direct or guide the University are not to be construed as Board

Regulations." This sentence makes it clear that the stated policies in the Regulations standardize the Board's activities, and other Board actions should not be construed to be a part of the Regulations.

In sum, while Cage could be terminated at-will, such a termination was subject to a twelve-month period of continued employment following notice of termination. That period of employment was not merely procedural, but instead amounted to a limited property interest. By alleging that he was denied that twelve-month period of employment, Cage has stated a due process claim. Thus, Defendants' motion to dismiss individual Board Defendants and Lindsey is denied.

### C. Sufficiency of Pleading

Defendants also argue that Cage did not plead his § 1983 claim sufficiently to overcome Defendants' affirmative defense of qualified immunity. Section 1983 claims subject to qualified immunity defenses do not require heightened pleading standards. *See Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 476 (7th Cir. 1997) (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166–67 (1993)). Cage's complaint meets the federal notice-pleading standards, as he provided factual allegations and relevant Regulations that purportedly connect Defendant to the alleged misconduct. Moreover, "a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). Immunity defenses typically rely on the facts of the case and thus "dismissal at the pleading stage is inappropriate: '[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.'" *Id.*

In any case, Cage's allegations do survive a challenge based on a qualified immunity defense at the motion to dismiss stage. To overcome a qualified immunity defense, Cage must allege conduct on the part of Defendants' that violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts use a two-prong analysis for such cases that examines whether (1) the plaintiff alleged "a deprivation of an actual constitutional right" and (2) that "right was clearly established at the time of the alleged violation." *Alvarado*, 267 F.3d at 652. The Supreme Court has held that it is not necessary to analyze the two prongs in any particular order, but it "is often beneficial" to use the order described above. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As discussed above, Cage has sufficiently alleged the deprivation of a constitutionally protected property interest and therefore his complaint meets the first prong.

The second prong considers the "objective legal reasonableness of the [alleged] action, assessed in light of the legal rules that were clearly established at the time [the action] was taken." *Id.* at 244 (internal quotation marks omitted). To this end, on several occasions the Supreme Court has recognized that a public employee may have a constitutionally-protected property interest in his or her state employment. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539 (1985); *Bishop*, 426 U.S. at 344–45; *Roth*, 408 U.S. at 576; *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). Viewing the facts in the light most favorable to Cage, Defendants should have reasonably understood their actions could constitute such a constitutional violation. Therefore, at this stage, Cage has alleged sufficient facts to survive a qualified immunity challenge[3] and the motion to dismiss the claims as improperly pleaded is denied.

---

[3] While the Court denies the motion to dismiss based on qualified immunity grounds at this stage, Defendants may raise this argument later in the proceeding. *See Behrens v. Pelletier*, 516 U.S. 299, 307–10 (1996).

## II. State Employee Ethics Act

In addition to his § 1983 claim, Cage brings a state law claim against Defendants alleging unlawful retaliation in violation of the Ethics Act. 5 ILCS 430/15-10. Defendants contend that Cage, as in-house counsel, cannot maintain a claim under that statue.

The Ethics Act is an Illinois statute providing that:

An officer, a member, a State employee, or a State agency shall not take any retaliatory action against a State employee because the State employee does any of the following:

(1) Discloses or threatens to disclose to a supervisor or a public body an activity, policy, or practice of any officer, member, State agency, or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation.

5 ILCS 430/15-10. "When interpreting state law, a federal court's task is to determine how the state's highest court would rule." *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011). Yet the Illinois Supreme Court has not had an opportunity to interpret this section of the Ethics Act. *See Crowley*, 51 N.E.3d at 77 (noting the "paucity of case law on article 15 of the Ethics Act"); *Hosick v. Chi. State Univ. Bd. of Trs.*, 924 F. Supp. 2d 956, 974 (N.D. Ill. 2013). In such a situation, a federal court "should consult and follow the decisions of the intermediate appellate courts to predict how the supreme court would act given the chance." *In re Zimmer, NexGen Knee Implant Prds. Liability Litig.*, 884 F.3d 746, 751 (7th Cir. 2018) (internal quotation marks omitted). Here, there is also no appellate authority directly on point either. *See Crowley*, 51 N.E.3d at 76–80 (addressing the potential applicability of an in-house counsel exception to the Ethics Act but ultimately finding that defendants forfeited a determination as to the applicability of this exception by not raising it at trial). That being the case, a federal court may consult "a variety of other sources, including other relevant state precedents, analogous decisions . . . and

11

any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007).

The Ethics Act does not expressly exclude legal counsel from bringing retaliation claims. In arguing that it nonetheless does exclude legal counsel, Defendants analogize the cause of action under the Ethics Act to the tort of retaliatory discharge. *See Crowley v. Watson*, 51 N.E.3d 69, 77 (Ill. App. Ct. 2016) (noting that the cause of action under the Ethics Act is "analogous to the tort of retaliatory discharge"). Retaliatory discharge is a common law tort that provides relief to employees whose termination contravenes public policy, such as when an employee must choose between reporting illegal company conduct and risking termination, or abstaining from reporting such conduct in order to retain employment. *See Balla v. Gambro, Inc.*, 584 N.E.2d 104, 107–09 (Ill. 1991); *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878–79 (Ill. 1981). The Illinois Supreme Court has recognized that generally in-house counsel cannot state a cause of action for retaliatory discharge. *Balla*, 584 N.E.2d at 108. Defendants claim that because Cage does not deny that the common law exception also applies to the Ethics Act, he has waived his ability to challenge the exception's existence. Generally, when a party does not dispute or answer an opposing party's position, the party that took no action waives its ability to make an argument disputing that position. *See In Re LaMont*, 740 F.3d 397, 410 (7th. Cir. 2014); *Bonte v. U.S. Bank N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver"). Because Cage does not dispute the applicability of the common law exception to the Ethics Act's cause of action, waiver applies here.

Even absent waiver, the Court believes that the Illinois Supreme Court would find that the Ethics Act contains an exception for legal counsel. The Illinois Supreme Court has held that "[a] statute will be construed as changing the common law only to the extent the terms thereof

12

warrant, or is necessarily implied from what is expressed. . . . It will not be presumed that an innovation was intended beyond what is specifically or clearly implied." *Cedar Park Cemetery Ass'n v. Cooper*, 96 N.E.2d 482, 484 (Ill. 1951) (citations omitted). In Illinois,

> [a] change in the common law may . . . be shown through the enactment of general and comprehensive legislation which specifically describes "course of conduct, parties, things affected, limitations and exceptions" . . . . Such legislation "indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter."

*In re C.B.L.*, 723 N.E.2d 316, 318 (Ill. App. Ct. 1999) (citations omitted). Therefore, in Illinois, a statute can abrogate the common law only by stating clear language of intent to change the law, or with legislation so comprehensive and specific that it completely supersedes the common law.

The Illinois Supreme Court has applied the common law in situations where statutes have codified similar areas of the law. For instance, in *Adams v. Northern Illinois Gas Co.*, 809 N.E.2d 1248, 1272–73 (Ill. 2004), a tariff codified the common law that gas companies generally held no liability to customers. This tariff, however, did not include the common law exception to a gas company's liability when the company knew or should have known of a potential gas-related hazard. The Illinois Supreme Court found this exception was not clearly abrogated by the tariff and thus still applied. *Id.*; *see also Barthel v. Ill. Cent. Gulf R.R. Co.*, 384 N.E.2d 323, 327 (Ill. 1978) (negligence-related railroad statute did not abrogate the affirmative defense of contributory negligence because there was no clear language stating such an intention). Similarly, the Ethics Act does not clearly state an intention to abrogate the common law, nor is it particularly comprehensive or specific so as to supersede the tort of retaliatory discharge completely.

Moreover, the logic behind the in-house counsel exception to retaliatory discharge claims applies equally in the context of the Ethics Act. The Illinois Supreme Court has held that

13

"generally, in-house counsel do not have a claim under the tort of retaliatory discharge," because the "nature and purpose of the tort" does not apply to in-house counsel and extending the tort would adversely effect the attorney-client relationship. *Balla*, 584 N.E.2d at 108. That is because "in-house counsel plainly are not confronted [with the same] dilemma" as other employees when faced with an unethical workplace. *Id.* at 109. Under the Rules of Professional Conduct, in-house counsel "do not have a choice of whether to follow their ethical obligations as attorneys or [to] follow the illegal and unethical demands of their clients" *Id.* Licensed attorneys should be aware of these obligations and understand that "they will have to forgo economic gains in order to protect the integrity of the legal profession." *Id.* at 110. Additionally, the Illinois Supreme Court reasoned that "[e]mployers might be less willing to be forthright and candid with their in-house counsel [and] might be hesitant to turn to their in-house counsel for advice . . . knowing that their in-house counsel could use this information in a retaliatory discharge suit." *Id.* at 109. Thus, extending an action for retaliatory discharge to general counsel could "have an undesirable effect on the attorney-client relationship." *Id.* at 109. Similarly, nothing in the Ethics Act privileges an in-house counsel's right to be protected from retaliation over the attorney's own ethical duties to decline to follow the illegal or unethical commands of a client. And allowing in-house counsel to maintain an action under the statute would have an equally deleterious effect on the attorney-client relationship. Consequently, this Court believes that the Illinois Supreme Court would find that the exception that prevents legal counsel from bringing retaliatory discharge claims applies to the Ethics Act as well.

Having found that the Illinois Supreme Court would likely recognize an in-house counsel exception to the Ethics Act (or alternatively, that Cage has waived his ability to contend otherwise), it nonetheless remains a question of fact "whether an individual is primarily

14

practicing law in the context of a retaliatory discharge claim," and thus prevented from bringing suit. *Crowley*, 51 N.E.3d at 78. In other words, if Cage engaged in the whistleblowing activity as a layman, rather than a lawyer, he could still maintain a claim under the Ethics Act. *See id.*; *see also Balla*, 584 N.E.2d at 108. Cage and Defendants disagree whether Cage obtained the information that he reported regarding Vallas as a result of his position as General Counsel to CSU. Cage contends he learned the troubling information concerning Vallas's past outside of his role as General Counsel, as the information was public knowledge and reported on by local news sources. However, Defendants argue that Cage was acting within his duty as a legal advisor when he informed the University of his legal concerns. Cage responds that because he reported these concerns first at an off-campus lunch with Hatch, and then later through private counsel, he was not acting in his capacity as legal counsel to CSU. Furthermore, Cage specifies that the Board of Trustees has its own legal counsel and thus he cannot be described as having a duty to serve the Board.

Viewing the facts in the light must favorable to Cage, it is plausible that his whistleblowing activity was not done in his capacity as General Counsel to CSU. At this point, there are questions of fact that must be more fully developed before this Court can resolve this dispute. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000) (finding when there is a question of fact, parties are entitled to present evidence to support their claim). Thus, Defendants' motion to dismiss the Ethics Act claims is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion is granted in part and denied in part. The Court grants Defendants' motion to dismiss with respect to the § 1983 claim against the Board and denies the motion with respect to the § 1983 claims against the Individual Board Defendants and the Ethics Act claims.

ENTERED:

Dated: August 30, 2018

Andrea R. Wood
United States District Judge