# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PATRICK CAGE, ) | |
| ) | |
| Plaintiff, ) | Case No. 17-cv-7621 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| TIFFANY HARPER, NICHOLAS GOWEN, ) | |
| KAMBIUM BUCKNER, DR. MARSHALL ) | |
| HATCH, SR., DR. HORACE SMITH, ) | |
| DR. RACHEL LINDSEY, and THE BOARD ) | |
| OF TRUSTEES OF CHICAGO STATE ) | |
| UNIVERSITY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick Cage filed a motion for leave to amend his complaint or, in the alternative, to strike an affirmative defense. He asks the Court for one of three possible forms of relief: (1) strike an argument that Defendants made in their response to Cage's motion for partial summary judgment; (2) find that, by including that argument in their response, Defendants implicitly agreed to a "constructive amendment" of the complaint; or (3) grant leave to file a third amended complaint. *See generally* Pl.'s Mtn. to File a Third Am. Cplt. (Dckt. No. 368). For the following reasons, Cage's motion is denied.

### Background

Plaintiff Patrick Cage served as General Counsel for Chicago State University from 2009 until May 2017, when he was fired. *See* Second Am. Cplt., at ¶ 10 (Dckt. No. 59). Now, Cage is suing a number of individual Defendants (the former interim President, plus five members of the

University Board of Trustees), as well as the Board itself. *See id*. at ¶¶ 10–17. He brings four counts.

This motion is about Count I (only), a due process claim. Cage alleges that University Regulations gave him a property interest in twelve months of continued employment after he was fired, and that the University deprived him of that interest by forcing him to stop working immediately. The other three Counts aren't relevant to this motion, but they involved retaliation claims under state law and the First Amendment.

Cage first filed his lawsuit in October 2017, more than three-and-a-half years ago. *See* Dckt. No. 1. Since then, he has filed two amended complaints, and the parties have conducted extensive discovery. The parties have also fully briefed eight different motions for summary judgment. *See* Defs.' Corrected Brief in Opposition to Pl.'s Mtn. for Leave to File a Third Am. Cplt., at 2–3 (Dckt. No. 374). After almost four years, and almost 400 docket entries, there is a lot of water under the bridge.

Over the entire course of the litigation, Cage has argued that his "property interest" in continued employment – the heart of his due process claim – comes from a particular provision of the University Regulations, which is a kind of employee handbook. *Id*. Section II(B)(4)(b) of the Regulations provides that every employee other than the President must receive written notice of his or her termination from the President. *See* Regulations, at 32 (Dckt. No. 59-1). Under that provision, if an employee is fired without cause, then the employee must receive notice that he or she is being let go a certain number of months in advance. *Id*.

The exact amount of notice the employee is entitled to receive (and thus the amount of pay) depends on how long the employee has worked at the University. An employee who has worked at the University for one year or less is entitled to three months of notice. *Id*. An

employee who has worked at the University between two and five years is entitled to six months of notice. *Id*. An employee who has worked six or more years at the University is entitled to twelve months of notice. *Id*.

When Cage was fired in May 2017, he had more than six years of employment at the University under his belt. *See* Second Am. Cplt., at ¶ 10 (Dckt. No. 59). So, he has consistently argued that the University's Regulations gave him a property interest in twelve months of continued employment after he was let go, and that the University deprived him of that interest when it forced him to stop working on the day of his firing. *See, e.g.*, Pl.'s Mem. in Support of Summ. J., at 11 (Dckt. No. 290) ("This provision [section II(B)(4)(b) of the Regulations] creates a protected property interest in twelve months of continued employment after notice of termination.").

Defendants, for their part, have consistently argued that the Regulations do not give Cage a property interest at all. *See, e.g.*, Defs.' Mtn. to Dismiss. Pl.'s Am. Cplt., at 7 (Dckt. No. 24) ("Plaintiff's claim is subject to dismissal because he had no legally cognizable *property interest* in his employment as University General Counsel.") (emphasis in original). They have made that argument in a variety of different ways. For example, in their motion to dismiss, Defendants argued that section II(B)(4)(b) of the Regulations does not give Cage a property interest because, assuming that the Regulations apply to Cage, they are "procedural" rather than substantive and thus cannot form the basis of a property interest. *Id.* at 8–11 (Dckt. No. 24). But in their motions for summary judgment, they argue that section II(B)(4)(b) of the Regulations doesn't apply to Cage because he's an attorney, and background state-law principles say that a client may fire its attorney at any time. *See, e.g.*, Def. Buckner's Mem. in Supp. of Mtn. for Summ. J., at 13 (Dckt. No. 254).

In September 2020, Cage filed a motion for partial summary judgment on his due process claim. *See generally* Pl.'s Mtn. for Summ. J. (Dckt. No. 289). In his motion, he argued – as he always has – that the University Regulations gave him a property interest in twelve months of continued employment. *See* Pl.'s Mem. of Law in Supp. of Mtn. for Summ. J., at 8–10 (Dckt. No. 290).

In response, Defendants argued – as they always have – that Cage did not have a property interest in twelve months of continued employment. *See* Defs.' Resp. to Pl.'s Mtn. for Summ. J., at 9–11 (Dckt. No. 320). But this time, Defendants offered a new argument to that effect. They pointed to Cage's "offer letter," which functioned as Cage's employment contract, a document that Cage himself had produced in discovery way back in 2018. *Id*. at 9–10.

Specifically, Defendants argued that: (1) under Illinois law, to the extent the terms of the offer letter conflict with the terms of the Regulations, the offer letter governs; (2) the offer letter contains a conflicting term because it entitles Cage to six months (not twelve months) of termination pay; and therefore (3) section II(B)(4)(b) of the Regulations does not apply to Cage. *Id*.

Cage offered several replies. *See* Pl.'s Reply in Supp. of Mtn. for Summ. J., at 7–10 (Dckt. No. 334). First, he argued that the offer letter did not supersede the Regulations, because it simply gave him additional rights. *Id*. at 7 ("In this case, Cage's contractual rights were created by two separate contracts, the offer letter and the Regulations, which together created more rights to severance than either one separately."). Second, he argued that "[t]hough the offer letter was not plead [sic] as a basis for the due process claim, Defendants have injected the issue into the summary judgment process thereby consenting to amendment of the due process claim to include the offer letter as supporting a property interest." *Id*. at 8. That is, Cage argued that

4

because Defendants brought up the offer letter, they consented to allowing Cage to amend his complaint and plead the offer letter as an alternate basis for his property interest.

At this point, the parties began a protracted back and forth about who was allowed to make what arguments about the offer letter.

First, Defendants filed a sur-reply, denying that they opened the door to a new legal theory. They argued that they did not give Cage an opening to unveil a new theory of the case simply by pointing to his employment contract. In their view, they did not give Cage the green light to argue that the Regulations and/or the offer letter created a property interest. *See* Defs.' Sur-Reply in Opposition to Pl.'s Mtn. for Summ. J, at 5–6 (Dckt. No. 363). Specifically, they argued that "[i]t is well-settled that a party cannot amend his complaint to add new claims in response to arguments presented at summary judgment." *Id*. at 5.

Not to be outdone, Cage filed a *response* to Defendants' sur-reply. He argued that Defendants had waived any argument about the offer letter because the letter was an "affirmative defense" and thus should have been raised in Defendants' answers. *See* Pl.'s Mtn. for Leave to File Response to Defs.' Sur-Reply in Opposition to Pl.'s Mtn. for Summ. J., Ex. A, at 7–10 (Dckt. No. 366-1). In the alternative, he argued that, by making this argument in their response, Defendants had implicitly agreed to a constructive amendment of the complaint, allowing Cage to argue that either the Regulations or the letter gave him an enforceable property interest. *Id*.

Then, Cage filed this motion, asking the Court to: (1) strike Defendants' argument about the offer letter; (2) find that Defendants had implicitly consented to a constructive amendment of the complaint, to include either the Regulations *or* the offer letter as a basis for Cage's property interest; *or* (3) grant leave to file a third amended complaint. *See generally* Pl.'s Mtn. for Leave to File a Third Am. Cplt. (Dckt. No. 368).

5

Finally, Defendants filed a response to Cage's motion. They argued, among other things, that: (1) their argument about the offer letter is not affirmative defense, and thus did not need to be included in their answer; and (2) the Court should not grant leave to file a third amended complaint. They point to the fact that Cage himself had produced the offer letter long before the deadline to amend his complaint, and could not show "good cause" for waiting until now to do so. *See generally* Defs.' Corrected Resp. to Pl.'s Mtn. for Leave to File a Third Am. Cplt. (Dckt. No. 374).

Suffice it to say that the parties have now gone round and round about what role Cage's employment contract should have in the case at this late stage. But one point should not get lost. For whatever reason, Cage did not rely on his employment contract in this employment case until the middle of the briefing on the motions for summary judgment.

## Discussion

### I. Motion to Strike

First, Cage moves to strike Defendants' argument about the offer letter from Defendants' brief in response to Cage's motion for summary judgment. *See* Pl.'s Mtn. for Leave to File a Third Am. Cplt., at ¶¶ 1, 8 (Dckt. No. 368). He argues that the argument is an "affirmative defense," and that Rule 8(c) requires a defendant to plead affirmative defenses in an answer. He points out that Defendants raised no such argument in their answers. *Id.* at ¶ 8.

A threshold question is whether the argument about the offer letter is an affirmative defense at all. The Seventh Circuit defines an affirmative defense as an argument that "limits or excuses a defendant's liability even if the plaintiff establishes a *prima facie* case." *Bell v. Taylor*, 827 F.3d 699, 704–05 (7th Cir. 2016) (quoting *Tober v. Graco Children's Prods., Inc.*, 431 F.3d 572, 579 n.9 (7th Cir. 2005)). In other words, it is "[a] defendant's assertion of facts

and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." *Id*. (quoting *Defense*, Black's Law Dictionary (10th ed. 2014)); *see also* Fed. R. Civ. P. 8(c)(1) (identifying affirmative defenses).

Defendants' argument about the employment contract is not an affirmative defense because it attacks Cage's *prima facie* case. To establish a due process claim, a plaintiff must demonstrate "(1) that he had a constitutionally protected property interest; (2) that he suffered a loss of that interest amounting to a deprivation; and (3) that the deprivation occurred without due process of law." *See Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). Defendants' argument about the offer letter takes aim at prong one. They use the employment contract to undermine the notion that Cage had a property interest in twelve months of severance pay. *See Bell*, 827 F.3d at 704–05.

That is a defense, of sorts. It's a response to the complaint. But it is not an *affirmative* defense. It's an argument about why Cage has failed to prove his case.

The argument is not affirmative defense, so Defendants were not required to plead it in their answers. Cage's motion to "strike" Defendants' argument about the offer letter is denied.

## II. Motion for Constructive Amendment

Next, Cage asks the Court to find that Defendants have consented to constructively amending the complaint. He argues that Defendants implicitly consented to the amendment "by inserting a new affirmative defense into the case during the summary judgment process." *See* Pl.'s Mtn. for Leave to File a Third Am. Cplt., at ¶ 6 (Dckt. No. 368). In his view, by raising the employment letter, Defendants have created an opening for Cage to argue that his property interest comes from either the Regulations *or* the offer letter.

7

Again, there are a few threshold issues. The first question is what, exactly, Cage is asking the Court to do. The Seventh Circuit has explained that the "doctrine of constructive amendment" – presumably the doctrine that Cage is referring to – is nothing more than a fancy name for Rule 15(b). *See Torry v. Northrup Grumman,* 399 F.3d 876, 878–79 (7th Cir. 2005) (holding that the doctrine of constructive amendment is "otiose," that is, irrelevant or functionless, because "the ground that it traverses is fully and clearly occupied by Fed. R. Civ. P. 15(b)"). So, the Court treats Cage's request as a motion to amend the complaint under Rule 15(b).

The next question is whether Rule 15(b) applies at the summary judgment stage at all. Looking only at the plain text of the rule, it is not a natural fit. Rule 15(a) is titled "Amendments Before Trial," and Rule 15(b) is titled "Amendments During and After Trial." *See* Fed. R. Civ. P. 15(a), 15(b). Here, the parties are at the summary judgment stage, which is "before trial." So, one might think that Rule 15(a), not Rule 15(b), applies. This inference is strengthened by the language of Rule 15(b), which refers to issues "*tried* by consent." *See* Fed. R. Civ. P. 15(b)(2) (emphasis added). It is awkward to apply, before trial, a rule about "Amendments During and After Trial." *See* Fed. R. Civ. P. 15(b).

However, the question whether Rule 15(b) applies at the summary judgment stage has provoked a fairly even circuit split. *See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 327 (3d Cir. 2012) (collecting cases, but declining to take a position). And the Seventh Circuit has suggested that Rule 15(b) can apply at the summary judgment stage, even though the text points to events "During and After Trial." *See* Fed. R. Civ. P. 15(b); *see also Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir. 1998) (explaining that "[b]ecause both parties squarely addressed the strict liability theory in their summary judgment briefs, the complaint was

constructively amended to include that claim") (citing Rule 15(b) as a "*cf.*"); *Walton v. Jennings Cmty. Hosp., Inc.*, 875 F.2d 1317, 1320 n.3 (7th Cir. 1989) (holding that the pleadings were constructively amended when, during the first round of summary judgment briefing, the district court sua sponte injected an unpled cause of action into the case, the defendant filed another motion for summary judgment on that issue, and the parties fully briefed it); *Hutchins v. Clarke*, 661 F.3d 947, 957 (7th Cir. 2011) (applying Rule 15(b)(2) to new issues raised in summary judgment briefing). So, under the Seventh Circuit's approach, Rule 15(b) applies. At the summary judgment stage, if "an issue not raised by the pleadings is tried by the parties' express or implied consent," then the Court "must" treat the issue "as if raised in the pleadings." *See* Fed. R. Civ. P. 15(b)(2).

Applying Rule 15(b), the Court concludes that the complaint was not constructively amended because the Defendants did not consent. Under Rule 15(b), a party may amend the pleadings with the consent of the district court, *see* Fed. R. Civ. P. 15(b)(1), or with the "express or implied consent" of all parties, *see* Fed. R. Civ. P. 15(b)(2). Consent is key. *See Matter of Prescott*, 805 F.2d 719, 725 (7th Cir. 1986) ("The key factor in determining whether the pleadings have been amended is whether the issue has been tried with the express or implied consent of the parties."). A district court is "well within its discretion" to deny a motion seeking to add a new theory of liability if the defendant has not consented to it. *See Aldridge v. Forest River, Inc.,* 635 F.3d 870, 875 (7th Cir. 2011).

Defendants have not expressly consented to allow Cage to amend the complaint. After all, they filed a motion opposing the amendment. The question is only whether they implicitly consented to an amendment to the complaint.

9

Cage argues that Defendants implicitly consented to the amendment "by inserting a new affirmative defense into the case during the summary judgment process." *See* Pl.'s Mtn. for Leave to File a Third Am. Cplt., at ¶ 6 (Dckt. No. 368). That argument runs into two obstacles.

First, the Court has held that Defendants' argument about the offer letter is not an affirmative defense. So, the question is whether Defendants implicitly consented to an amendment to the complaint by raising the offer letter in response to Cage's motion for summary judgment.

Second, it is true that "[a] party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest a motion to conform." *See* 6A Arthur R. Miller *et al.*, *Federal Practice and Procedure* § 1493 (3rd ed. 2021). However, "when the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under Rule 15(b)(2)." *Id*. Or, as the Seventh Circuit put it, "a court will not imply a party's consent to try an unpleaded claim 'merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim.'" *Reynolds v. Tangherlini*, 737 F.3d 1093, 1106 (7th Cir. 2013) (quoting *Ippolito v. WNS, Inc.*, 864 F.2d 440, 456 (7th Cir. 1988)).

That principle applies here. Defendants pointed to the letter as a piece of evidence relevant to an issue already in the case: whether section II(B)(4)(b) of the Regulations applied to Cage. The Court does not infer from that argument that Defendants consented to try a new theory of liability: whether the letter supports a property interest under the Due Process Clause.

Cage's motion for constructive amendment is denied.

### III. Motion to Amend the Complaint Under Rule 16

Finally, Cage asks for leave to file a third amended complaint. *See* Pl.'s Mtn. for Leave to File a Third Am. Cplt. (Dckt. No. 368). On January 30, 2018, Judge Wood (this Court's predecessor, before reassignment) set a deadline of May 22, 2018 for any amendments to the pleadings. *See* 1/30/18 Order (Dckt. No. 28) ("Any motion to amend pleadings shall be filed by 5/22/2018."). That deadline lapsed more than three years ago.

Allowing an amended complaint at this late stage would require modifying this Court's scheduling order. So Rule 16 applies. The Court must assess Cage's request under the standard set out in Rule 16(b)(4), which requires him to demonstrate "good cause" for the amendment. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also CMFG Life Ins. Co. v. RBS Secs., Inc.,* 799 F.3d 729, 749 (7th Cir. 2015) ("To amend a pleading after the expiration of the trial court's scheduling order deadline to amend pleadings, the moving party must show 'good cause.'") (cleaned up)); *see also* 3 James Wm. Moore *et al.*, *Moore's Federal Practice* § 16.14[1][a] (3d ed. 2020) ("When a party seeks to amend a pleading after the deadline set in the scheduling order, thereby necessitating amendment of the scheduling order as well, courts apply Rule 16(b)'s 'good cause' standard rather than the more lenient standard of Rule 15(a) . . . .").

To determine whether a party has shown "good cause," "the primary consideration . . . is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon,* 651 F.3d 715, 720 (7th Cir. 2011). In other words, "'[g]ood cause for amending a scheduling order means that scheduling deadlines cannot be met despite a party's diligent efforts. Thus, the party seeking an extension must show that, despite due diligence, it could not have reasonably met the scheduled deadlines." *See* 3 James Wm. Moore *et al.*, *Moore's Federal Practice* § 16.14[1][a] (3d ed.

2020). Courts also consider factors including, "the importance of the amendment," "potential prejudice in allowing the amendment," and "the availability of a continuance to cure the prejudice." *Id.*

Long before the deadline, Cage clearly had all the information he needed to amend his complaint to include information about his employment contract. The proposed amendment is about Cage's employment contract. And Cage had a copy of his own employment contract in his hands from day one.

Cage produced the contract to Defendants on March 21, 2018 – two months before the deadline to amend pleadings. *See* Defs.' Corrected Resp. to Pl.'s Mtn. for Leave to File a Third Am. Cplt., at 4–5 (Dckt. No. 374). Cage had to know that his employment agreement might be relevant to an employment dispute. After all, Cage has expertise in employment law. It strains credulity that Cage – the former General Counsel – had no idea that his employment contract might impact his rights to employment-related benefits until Defendants pointed it out.

The proposed amendment is years late. Allowing the amendment this late in the game would unfairly prejudice the Defendants. Again, Cage filed this case in October 2017, more than three-and-a-half years ago. Discovery largely closed in 2019. *See* 10/28/19 Order (Dckt. No. 170); 12/19/19 Order (Dckt. No. 197) ("Any final discovery-related motions shall be filed by January 6, 2020 and noticed in front of the assigned Magistrate Judge. Fact discovery is otherwise closed, and the parties shall not issue new discovery requests.").

Along the way, this Court already gave Cage several chances to amend the complaint. The last amendment took place on September 5, 2018. *See* Second Am. Cplt. (Dckt. No. 59). That version of the complaint has been on the books and on the docket for nearly three years.

Since then, the parties engaged in intensive discovery, and did so with a fixed understanding of what was at issue.

The parties devoted enormous resources to briefing the eight summary judgment motions. Defendants did so assuming that they knew the lay of the land, including what claims Cage was bringing against them. Allowing a years-late amendment would create a need to reopen discovery years after closing time.

The very first Rule of Civil Procedure sets the tone for litigation. The first goal is that the outcome must be "just." *See* Fed. R. Civ. P. 1. But the second goal is that litigation must be "speedy." *Id.* And the third goal is "inexpensive." *Id.* Amending a complaint after more than three years of litigation would prolong this case and drain resources, for no legitimate reason. The parties and the Court devoted substantial resources to this case based on an understanding of what the case was about. Changing gears so far down the line would reduce "speed[]" and increase "[]expens[e]." *Id.* All good things must come to an end, and so must litigation.

**Conclusion**

Plaintiff's Motion for Leave to File Third Amended Complaint or in the Alternative to Strike Defendants' Affirmative Defense (Dckt. No. 368) is hereby denied.

Date:  July 16, 2021

Steven C. Seeger
United States District Judge