UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PATRICK B. CAGE,                          )
                                          )
              Plaintiff,                  )     Case No. 17-cv-7621
                                          )
       v.                                 )     Hon. Steven C. Seeger
                                          )
TIFFANY HARPER, NICHOLAS                  )
GOWAN, KAMBIUM BUCKNER,                   )
DR. MARSHALL HATCH, SR.,                  )
DR. HORACE SMITH, and DR. RACHEL          )
LINDSEY, in their individual capacities,  )
and the BOARD OF TRUSTEES FOR             )
CHICAGO STATE UNIVERSITY,                 )
                                          )
              Defendants.                 )
_____ )

## MEMORANDUM OPINION AND ORDER

This Order is the final nail in a long-running dispute between Plaintiff Patrick Cage (on the one hand) and Chicago State University and its Board of Trustees and interim President (on the other). Cage, the former General Counsel of Chicago State University, filed suit about his termination, alleging that Chicago State University fired him for reporting a potential ethics violation.

The parties filed cross motions for summary judgment. This Court granted Defendants' motion and denied Plaintiff's motion. *See* Mem. Opin. and Order (Dckt. No. 379). The Seventh Circuit affirmed.

Defendants filed a bill of costs (Dckt. No. 386), seeking recovery of costs for deposition transcripts, witnesses, and copies of materials necessarily used in the case, for a grand total of $25,083.86. Plaintiff objected to the bill of costs. (Dckt. No. 391).

For the reasons stated below, the Court awards Defendants $22,811.49 in costs.

**Legal Standard**

The American Rule is that each side in a lawsuit must pay its own attorneys' fees, unless a statute or a contract says otherwise. Attorneys' fees are one thing. Costs are another.

Federal Rule of Civil Procedure 54(d)(1) provides that "costs – other than attorney's fees – should be allowed to the prevailing party." *See* Fed. R. Civ. P. 54(d)(1). A statute enumerates the costs that are recoverable under Rule 54(d)(1). *See* 28 U.S.C. § 1920. Recoverable costs include (1) fees of the clerk and marshal, (2) fees for transcripts necessarily obtained for use in the case, (3) witness fees and expenses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation for court-appointed experts and interpreters. *See* 28 U.S.C. § 1920(2); *Coleman v. Robert W. Depke Juvenile Justice Ctr.*, 2018 WL 11426156, at *1 (N.D. Ill. 2018) (citing *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 481 F.3d 442, 447 (7th Cir. 2007)).

Even if authorized by statute, however, "a cost must be both reasonable and necessary to the litigation for a prevailing party to recover it." *Little v. Mitsubishi Motors N. Am.*, 514 F.3d 699, 702 (7th Cir. 2008). Deciding whether to tax costs against the losing party requires two inquiries: "(1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago,* 218 F.3d 816, 824 (7th Cir. 2000). The rule "provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006).

However, the "party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs. of the Chicago Plastering Inst. Pension Tr. v. Cork Plastering Co.,* 570 F.3d 890, 906 (7th Cir. 2009); *Telular Corp. v. Mentor*

*Graphics Corp.,* 2006 WL 1722375, at *1 (N.D. Ill. 2006) ("The prevailing party bears the burden of demonstrating the amount of its recoverable costs because the prevailing party knows, for example, how much it paid for copying and for what purpose the copies were used."). Once the prevailing party makes that showing, the losing party bears the burden of affirmatively showing that the taxed costs are not appropriate. *See Beamon v. Marshall & Ilsley Tr. Co.,* 411 F.3d 854, 864 (7th Cir. 2005).

Ultimately, the decision whether to award costs rests within the discretion of the district court. *See M.T. Bonk Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1409 (7th Cir. 1991).

### Analysis

Defendants claim three categories of costs: (1) costs for deposition transcripts, (2) witness fees, and (3) copy costs. *See* Bill of Costs (Dckt. No. 386). In total, Defendants claim costs in the amount of $25,083.86. *Id.*

Cage objects to Defendants' bill of costs on two grounds. As a general matter, Cage argues that the Court should not impose costs because he is unable to pay those costs now or in the future. *See* Pl.'s Resp. to Defs.' Bill of Costs ("Pl.'s Resp."), at 2–3 (Dckt. No. 391). Then, Cage drills down into the requests themselves, arguing that the costs are unreasonable. *Id.* at 3–10.

### I.  Inability to Pay

Cage begins with an overarching argument about his inability to pay. As he sees it, he shouldn't have to pay, because he *can't* pay.

Under Rule 54(d), a prevailing party is presumptively entitled to costs. But the same rule also "generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987).

An inability to pay is one of the reasons that a court can take into account when deciding whether to tax costs. *See Rivera v. City of Chicago*, 469 F.3d 631, 636 (7th Cir. 2006). Courts often walk through a two-step process. For starters, "the non-prevailing party must show a present and future inability to pay costs, supported by an affidavit and documentary evidence of income and liabilities." *McDonald v. Henze*, 2022 WL 2785203, at *3 (N.D. Ill. 2022). And then, the district court has the discretion to reduce the amount of costs or deny costs altogether, "considering the amount of the costs, the non-prevailing party's good faith in bringing the claims, and the difficulty of the issues raised." *Id.* "No one factor is determinative, but the district court should provide an explanation for its decision to award or deny costs." *Rivera*, 469 F.3d at 635–36.

Cage has demonstrated an inability to pay. He submitted an affidavit swearing that he has faced unemployment for five years, and now relies solely on $2,500 in monthly retirement benefits to cover living expenses. *See* Patrick Cage Aff., at ¶¶ 3–4 (Dckt. No. 391-1). On the other side of the ledger, Cage faces massive debt. He owes $200,000 in legal fees, $60,000 in credit card debt, and $150,000 in other loans. *Id.* at ¶¶ 5–6. He is late in paying over $60,000 toward his home mortgage. *Id.* at ¶ 7. That's not a lot of income, and a lot of debt.

Even so, shifting costs to the prevailing party based on the inability of the losing party to pay has its downsides. *Someone* has to pay the costs, and it is hard to see why the prevailing party should pay the entire tab of winning. Letting a litigant off the hook for costs that they impose – but can't afford – would reduce the incentive to pursue meritorious claims. People tend to spend more when other people have to foot the bill. Litigants should have to internalize the costs of their own behavior.

Here, the parties litigated the case to the nth degree. No stone was left unthrown. The parties fought on seemingly every issue under the sun.

That approach continued when the parties reached the summary judgment stage. As this Court noted at the time, "[t]he submissions from the parties are, by any measure, immense. There are eight summary judgment motions. The parties submitted eight different Rule 56.1 statements, containing hundreds of facts supported by a large volume of exhibits. Not to mention the responses, and the replies." *See* Mem. Opin. and Order, 5 (Dckt. No. 379).

Cage was not shy about pressing the case, and seemingly litigated with reckless abandon. A good example is his motion for leave to file a *response* to a *sur-reply* at the summary judgment stage. *See* Pl.'s Mtn. for Leave to File Sur-Reply (Dckt. No. 366). Final Judgment was the 380th docket entry.

Cage is not entirely to blame for the high level of acrimony, and for the scorched earth approach to the case. Each side encountered shelling. But he was a willing participant, too. The case was, at times, over-litigated. The parties threw everything they had at each other, and did so knowing that the loser would have to pay costs. Given that reality, this Court will hold the parties to that choice.

An inability to pay might affect the collectability of the costs. But on this record, given this Court's up-close-and-personal familiarity with the history of the case as a whole, the Court determines that an inability to pay, without more, is not a reason to let Cage off the hook. Cage's inability to pay is not a reason to lift the burden of paying for his losing battle.

## II.     The Reasonableness of the Costs

Next, Cage challenges many of the costs as unnecessary.

Courts must ensure that the costs are "both reasonable and necessary to the litigation." *Little*, 514 F.3d at 702. Plaintiff takes issue with three items: (1) the costs from various depositions; (2) fees associated with producing relevant excerpts from Chicago State University Board executive session meetings; and (3) various copying costs.

### A. Deposition Costs

Cage challenges some of the costs for his deposition. Specifically, he takes issue with the cost of the video recording ($1,325), the cost of an expedited seven-day delivery ($1,585.95), and the cost of a real-time transcript ($997.35). *See* Declaration of Nigel F. Telman ("Telman Dec."), at ¶¶ 4–5, 7 (Dckt. No. 386-1). And then, he challenges the costs from five other depositions.

### 1. Videotaping Plaintiff's Deposition

Cage argues that the cost of videotaping his deposition ($1,325.00) was unreasonable because "Defendants did not submit the video recording of this deposition for this Court to review at summary judgment." *See* Pl.'s Resp., at 6 (Dckt. No. 391). He also argues that "it was unreasonable for Defendants to impose costs on Cage for both a transcript of Cage's deposition as well as a video recorded deposition because Cage would have been available to testify if this litigation proceeded to trial." *Id.*

Anyone who has ever walked into a courtroom knows the value of video evidence, especially a videotaped deposition. All too often, transcripts are deathly boring to juries. They're like a ray-gun of slumber, designed to put people to sleep instead of drive a point home. The best way to knock out a jury is to read deposition designations.

Transcripts have their place, especially for cross examination. But nothing makes a deposition come to life like seeing and hearing the witness himself or herself, caught on tape.

Videotape has other virtues, too. All of us communicate in all sorts of ways, above and beyond the words that we choose. The written transcript does not capture everything. Things like tone, emotions, body language, volume, pace, and the like are nowhere to be found on a written transcript. Video provides more information than merely the spoken words, and gives the audience a better sense of what someone communicated and what it actually means. Video captures the atmosphere in ways that a written transcript simply can't.

"A cold written record never conveys the human dynamics of a hearing [or a deposition]. People communicate in all sorts of ways that a transcript cannot capture. Anyone who has ever appeared in court, or attended a deposition, knows the limits of a transcript. Written words imperfectly capture humanity. A speaker's volume, speed, and tone of voice send signals, not to mention the speaker's facial expressions and body language. People say a lot when they are speaking, above and beyond the words that they use. So much happens, and so much is felt, that isn't written down." *See Doe v. Loyola Univ. Chicago*, 2022 WL 4535090, at *31–32 (N.D. Ill. 2022).

Videotape also tends to put lawyers on their best behavior. Most people behave a little differently when they know that there is a camera in the room, capturing everything. Lawyers are no exception. Sometimes depositions get unnecessarily acrimonious, and video provides a check against bad behavior. It is not difficult for a judge to watch a video and figure out if a lawyer misbehaved. Video is bad-behavior insurance.

It's not malpractice to forego the opportunity to videotape a deposition of a key witness. It depends in part on the value of the case, the importance of the witness, the likelihood that the witness will get squirrely on the stand at trial, and so on. Lawyers handling the case have a

better sense of whether to videotape a deposition than a judge long after the fact. Still, when it comes to reasonable costs, the decision to videotape a key deposition is right down main street.

Some courts have denied a request for video costs when the witness is within the court's subpoena power. *See Nwoke v. Univ. of Chicago Med. Ctr.*, 2020 WL 7350626, at *2 (N.D. Ill. 2020); *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 2019 WL 3733443, at *2 (N.D. Ill. 2019); *Cascades Computer Innovation, LLC v. Samsung Elecs. Co.*, 2016 WL 612792, at *4 (N.D. Ill. 2016); *Intercontinental Great Brands LLC v. Kellogg N.A.*, 2016 WL 316865, at *2 (N.D. Ill. 2016); *Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 106 F. Supp. 3d 927, 943 (N.D. Ill. 2015); *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 2014 WL 125937, at *4 (N.D. Ill. 2014).

This Court sees things differently. The goal is to capture what happened *at the deposition*. Reenacting what happened by calling the person to the witness stand and using the cold, written transcript is second-best, at best. It is bloodless, and drained of humanity. Calling the person to the witness stand is not a perfect way to show the jury what the witness already said, in the heat of the moment, during the deposition.

A written transcript does not capture everything. And it does not resonate with people the same way. Seeing and hearing from the witness connects with the jury on a very human level. It packs a punch, and it lands with the jury. Juries tend to perk up when they see footage. There is nothing like footage of a compelling admission at deposition.

The fact that Defendants did not use the video at the summary judgment stage does not mean that the expense was inappropriate. When Defendants decided to record the deposition, they did not know when or how the case would end. For all they knew, the case was headed for

trial. Videotaping the deposition was reasonable at the time the decision was made, even if the case ended before they needed to use it.

If defense counsel had videotaped every deposition in the case, including relatively unimportant witnesses, for no apparent reason, then maybe the Court would see things differently. But Cage was no ordinary witness – he was the protagonist. On the record at hand, the Court finds that the cost of videotaping Cage's deposition was perfectly reasonable.

### 2.    Real-Time Transcript

The Court also concludes that the cost of a real-time transcript was a legitimate expense, too. *See Motorola Sols., Inc. v. Hytera Comms. Corp. Ltd.*, 2021 WL 3489813, at *4 (N.D. Ill. 2021) (collecting cases).

Taking a deposition is hard work, and it can be tough sledding. It requires speaking and, more importantly, listening. Any lawyer worth his or her salt listens to what the witness had to say, and then asks appropriate follow-up questions. Running down a list of pre-written questions in mechanical fashion is a good way to take a bad deposition.

Listening is tough work. Sometimes a witness will say something surprising, or say something too fast, or say something else that catches the lawyer's attention. Asking an appropriate follow-up question often requires knowing exactly what the witness said. And knowing exactly what the witness said is difficult if the lawyer has nothing to go on, except his or her own ears, memory, and dubious note-taking skills.

Real-time is a real cure. It allows the lawyer to see, instantly, exactly what the witness said. It helps the attorney formulate appropriate follow-up questions. It reduces the risk (and ensuing conflict) of getting it wrong, and mischaracterizing what the witness just said. Judges, after all, often use real-time on the bench, for a simple reason: it's helpful.

True, not every lawyer takes depositions using real-time. It is not essential for an effective deposition. But some lawyers find it beneficial, and there is nothing unreasonable about getting the help that a lawyer needs.

Real-time transcripts can be pricey, and the costs are not automatically recoverable. *See Motorola*, 2021 WL 3489813, at *4. It depends on the facts of the case. Here, given the importance of the deposition, there was nothing unreasonable about using real-time during the deposition of Cage. The cost involves one deposition, and the most important witness.

Again, when Defendants incurred the costs of real-time, they did not know how the case would turn out. They were willing to incur the cost when they themselves potentially had to bear it. The possibility of internalizing the cost supports the notion that the costs were reasonable. It is not as if Defendants signed up for real-time knowing that Cage would have to pay for it.

Based on the record as a whole, including the importance of the witness, the Court concludes that the cost of using real-time during the deposition of Cage was reasonable.

### 3. Expedited Delivery

Cage also takes issue with the costs of ordering an expedited transcript. "Generally, to recover additional costs of expedited transcripts, a party must 'show that it was reasonable and necessary to order transcripts on an expedited basis.'" *Africano v. Atrium Med. Corp.*, 2022 WL 1989450, at *7 (N.D. Ill. 2022) (quoting *Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*, 873 F. Supp. 2d 939, 946 (N.D. Ill. 2012)).

Defendants fail to explain why ordering Plaintiff's deposition transcript on an expedited basis was necessary. They claim that "given the importance of Plaintiff's deposition to this matter and in preparation for the deposition of witness Paul Vallas, scheduled for October 30,

10

2018," they needed seven-day delivery of the transcript. *See* Telman Dec., at ¶ 7 (Dckt. No. 386-1).

Sometimes there is an urgent need for an expedited transcript. But here, the Court doesn't see it. Defendants had three weeks between Plaintiff's deposition and Vallas's deposition. Maybe that three-week window was not long enough for normal delivery. Even so, it is not clear why Defendants needed to have Cage's deposition transcript in hand before the Vallas deposition.

The Court finds the expedited transcript was not necessary, so it reduces the amount by $392.40 to reflect the ordinary rate for transcript delivery in this Circuit.

### 4.    Other Costs

Finally, Cage challenges the costs for other depositions. Specifically, Cage takes issue with delivery fees ($280), the costs of witness Karen Riley's deposition ($358.50), and copies of original transcripts from other depositions ($2,964.15).

Delivery fees are the type of "ordinary business expense" that courts in this District routinely find unrecoverable. *See Hillmann v. City of Chicago*, 2017 WL 3521098, at *4 (N.D. Ill. 2017). So the Court denies the request to impose the $280 delivery fee.

The cost of Karen Riley's deposition ($358.50) is recoverable. True, neither party cited her testimony in their motions for summary judgment. But that's not the question. "The proper inquiry is whether the deposition was reasonably necessary to the case at the time it was taken, not whether it was used in a motion or in court." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 2015 WL 351244, at *4 (N.D. Ill. 2015) (quoting *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 455 (7th Cir. 1998)) (internal quotation marks omitted); *see also Coleman v. Robert W. Depke Juvenile Justice Ctr.*, 2018 WL 11426156, at *2 (citing *Little*, 514 F.3d at 702) ("The

11

Court awards deposition charges if the deposition appears reasonably necessary in light of the facts known at the time of the deposition.").

At the time of her deposition, Riley was "identified in Plaintiff's interrogatory responses as an individual who had knowledge of Plaintiff's claim for damages and/or mitigation efforts." Telman Dec., at ¶ 3 (Dckt. No. 386-1). Cage identified Riley as a witness, so deposing Riley was fair game.

Finally, the costs of original copies of transcripts for other witnesses (Paul Vallas, LaKeisha Marsh, Horace Smith, Bonnie Phillips, and Stephanie Kelly) were reasonable, too. Based on the facts of the case, deposing each of those witnesses was fair game.

Paul Vallas was important to the case, given that Cage raised concerns about the potential for Vallas to serve as the President of the University. LaKeisha Marsh was the new general counsel to the Board, and communicated about Cage's termination. Horace Smith was a Board member (and a party). Bonnie Phillips was the Board secretary. And Stephanie Kelly was considered for the general counsel position.

Again, "the introduction of a deposition in a summary judgment motion or at trial is not a prerequisite for finding that it was necessary to take that deposition." *Cengr*, 135 F.3d at 455. "[T]ranscripts need not be absolutely indispensable in order to provide the basis of an award of costs; it is enough if they are 'reasonably necessary.'" *Gecker as Tr. For Collins v. Menard, Inc.*, 2020 WL 1077695, at *2 (N.D. Ill. 2020) (quoting *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993)).

The reasonable necessity of a transcript depends on the facts known at the time of deposition. "The parties are not required to be clairvoyant about whether a witness's testimony will appear in subsequent briefing." *Bagwe*, 2015 WL 351244, at *4. Instead, costs may be

"taxed for depositions of persons likely to have information relevant to the claims and defenses of the parties." *Id.* (citing *Cengr*, 135 F.3d at 455).

Deposing these witnesses and getting the transcripts was reasonable, given their roles in the story. The transcripts didn't have to make an appearance in the summary judgment record to justify the costs. Even so, the Court will simply note that all but one of those depositions were part of the summary judgment record. *See* Marsh Dep. (Dckt. No. 299-4); Smith Dep. (Dckt. No. 319-12); Phillips Dep. (Dckt. No. 319-16); Kelly Dep. (Dckt. No. 299-2).

### B. Transcripts of the Executive Session Meetings of the Board

Cage also objects to the costs of preparing transcripts of the audio recordings of certain executive session meetings of the Board of Trustees.

During discovery, the parties had a dispute about the discoverability of the recordings. On January 16, 2019, Judge Wood (this Court's predecessor, before reassignment) ordered Defendants to produce relevant excerpts from recordings of certain executive session meetings of the Board of Trustees for Chicago State University. *See* 1/16/19 Order (Dckt. No. 74).

After that ruling, Defendants apparently ordered written transcripts of the audio recordings. According to Defendants, "[w]ritten transcripts of the audio recordings were necessarily obtained so that Defense counsel could analyze the contents of the recordings expeditiously to determine relevancy and whether the recordings contained privileged communications." *See* Telman Dec., at ¶ 28 (Dckt. No. 386-1). In other words, Defendants ordered transcripts of the audio recordings so that they could more efficiently find relevant excepts and turn them over to Cage. Defendants seek $7,546.72 that they spent on those transcripts. *See* Defs.' Bill of Costs, Ex. C (Dckt. No. 386-1).

Cage believes that the cost of preparing those transcripts was not necessary because Defendants used them to "expeditiously" determine what portions of the recordings were relevant, and because the audio recordings were already in the Defendants' possession. *See* Pl.'s Resp., at 7 (Dckt. No. 391).

The Court is not convinced. Transcripts are more user friendly than audio recordings. Cage pressed the issue of the meetings, and Cage benefitted when Defendants prepared transcripts of the proceedings.

After Judge Wood ordered Defendants to turn over relevant portions of the audio recordings, Defendants had a legitimate need for transcripts to determine which portions were privileged and which portions were relevant. Defendants eventually produced the resulting transcripts to Cage upon court order. *See* 4/16/19 Minute Entry (Dckt. No. 103). Getting the transcripts helped everyone. It made the content of the meetings more digestible and accessible.

The transcript costs are recoverable, but the cost of expediting the transcripts is not. Judge Wood gave Defendants no deadline for submitting the relevant audio recordings. Defendants nevertheless ordered the transcripts for either two-day or next-day delivery for a total of $7,546.72, and Plaintiff objects to those costs. *See* Pl.'s Resp., at 8 (Dckt. No. 391); *see also* Telman Dec., at ¶¶ 30–36.

Without the expedited rate – that is, using the transcript rates provided by the Judicial Conference of the United States for ordinary transcript delivery – Defendants' costs would have come out to $6,606.75. *See https://www.ilnd.uscourts.gov/Pages.aspx?page=transcriptrates*. Defendants have not offered any explanation for why "it was reasonable and necessary to order transcripts on an expedited basis.'" *Africano*, 2022 WL 1989450, at *7 (N.D. Ill. 2022) (quoting

*Se-Kure Controls*, *873* F. Supp. 2d at 946). The Court denies to tax those extra costs ($939.97) and, instead, only taxes the ordinary rate for the transcripts ($6,606.75).

Additionally, the Court declines to tax court reporter attendance fees. Defendants seek $660 in court reporter attendance fees. Cage does not challenge the attendance fees claimed by Defendants. Even so, the Court took a look *sua sponte*. The declaration attached to Defendants' bill of costs demonstrates that these attendance fees are not recoverable.

"[A]ttendance fees 'may be taxed as costs only to the extent that the fee, when added to the per-page rate charged for the deposition transcript, does not make the total charge per page exceed the page rate established by the Judicial Conference.'" *Williams v. Fico*, 2015 WL 3759753, at *5 (N.D. Ill. 2015) (quoting *Fletcher v. Chicago Rail Link, LLC*, 2007 WL 4557816, at *1 (N.D. Ill. 2007)).

Defendants already requested, and received, the maximum Judicial Conference rate for the transcripts associated with these attendance fees. So they cannot recover the court reporter attendance fees, too. *Id.* (citing *Perry*, 2011 WL 612342, at *5); *see also Blackwell v. Kalinowski*, 2011 WL 3555770, at *2 (N.D. Ill. 2011) (citing *Higbee v. Sentry Ins. Co.*, 2004 WL 1323633, at *2 (N.D. Ill. 2004)) ("[T]he court reporter's attendance fee may be taxed as costs only to the extent that the fee, when added to the per page rate charged for the deposition transcript, does not make the total charge per page exceed the applicable page rate established by the Judicial Conference.")).

The Court therefore deducts an additional $660 from the bill of costs.

### C.   Copies

Finally, Cage challenges certain copy costs.  He believes that Defendants provided too little detail to determine whether the copies were reasonable and necessary.  *See* Pl.'s Resp., at 9 (Dckt. No. 391).

The Court disagrees.  In support of their request for $2,276.25 in copying costs, Defendants submitted a declaration, plus internal records from the law firm about the copy costs.  *See* Telman Dec., at ¶ 40 (Dckt. No. 386-1); *see also* Ex. 5 (Dckt. No. 386-1, at 50 of 55).

The declaration confirms that the law firm used the copies to submit courtesy copies to the Court, and provide copies for counsel to work with during the litigation.  The accompanying billing record for the copy costs is quite detailed.  It spans six pages, and includes (1) the date, (2) the person making the copies, and (3) the amount.  The per-page rate of $0.15 cents is reasonable, too.

It's hard to see how the Court could expect more granular information, years after someone fired up the copy machine.  It is not as if Defendants presented a flat, fat bill, and expected Cage to pay it, without showing any backup.  Defendants came forward with a declaration, and detailed records showing the amount of copies, by whom, and when.  That's a reasonable justification for a reasonable expense.

The Court awards costs for copying totaling $2,276.25.

### Conclusion

For the reasons stated above, Defendants' bill of costs (Dckt. No. 386) is reduced to account for the Court's denial of costs for expedited delivery of Plaintiff's deposition transcript ($392.40), delivery costs for deposition transcripts ($280.00), and expedited delivery of the Board meeting transcripts ($939.97).  The total amount of recoverable expenses is $22,811.49.

Date:    April 25, 2023

Steven C. Seeger
United States District Judge